# AFFIDAVIT

I, Derek Garth, being duly sworn, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am presently employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I graduated from the Federal Law Enforcement Training Center in addition to the Special Agent Basic Training at the ATF National Academy in November 2023. Prior to being hired by the ATF in April 2023, I was employed by the Kansas City, Missouri Police Department for over six years with experience in both patrol and a specialized proactive unit (Impact Unit). While in the Impact Unit, I conducted car stops, warrant arrests, and other enforcement activities requested by investigative units of surrounding state, local, and federal agencies. In this capacity, I completed a multitude of street level investigations involving felonies and misdemeanors, many of which involved the use of firearms.

2. This affidavit contains information necessary to support probable cause for this application. It is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observation during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during the investigation.

## CASE BACKGROUND

3. While investigating an alleged firearms trafficking group, investigators identified **Rodney O. ELLISON (ELLISON)** and **Ernest L. HALL (HALL)** as possible firearms

traffickers. An ATF Confidential Informant (hereinafter CI[1]) at the direction of the ATF began making firearms purchases from both **ELLISON** and **HALL**.

## PURCHASE OF FIREARMS

4. Between June 18, 2024, and November 25, 2024, the CI purchased firearms from both **ELLISON** and **HALL** on several occasions.

5. The firearms transactions primarily occurred either at **ELLISON**'s residence (8004 East 103rd Terrace, Kansas City, Missouri), or at HALL's residence (11100 East 49th Street, Kansas City, Missouri). Between June 18, 2024, and November 25, 2024, the CI purchased six firearms from **ELLISON** and five firearms from **HALL**.

6. On November 18, 2024, **ELLISON** was in contact with the CI and informed the CI to bring as much money as possible because **ELLISON** had a lot of firearms to sell. The CI arranged for the deal to occur the following evening.

7. On November 19, 2024, at approximately 5:43 p.m. the CI responded to **ELLISON**'s residence and awaited **ELLISON**'s arrival. After **ELLISON** arrived, they entered **ELLISON**'s residence, and **ELLISON** showed photos of firearms to the CI in order to show the CI what was available for sale. The CI asked how much each gun cost and **ELLISON** responded "12" ($1,200) for each firearm. The CI ordered two. Immediately **ELLISON** called **HALL** and told **HALL** to bring two firearms. The CI inquired why **HALL** was bringing guns when the CI thought he was buying from **ELLISON**. **ELLISON** responded, "I don't wanna sell my shit." **ELLISON** told the CI that he (**ELLISON**) had two firearms, but **HALL** had four at his house.

---

[1] CI#1 has previously been arrested six times, with the most recent arrest in 2008. CI#1 is cooperating with law enforcement for monetary compensation. CI#1 has been cooperating with law enforcement for approximately 17 years. The information CI#1 has provided, in this investigation and in previous investigations, has proven to be accurate and truthful. The information provided has been corroborated by multiple investigative techniques. CI#1's information concerning **HALL** and **ELLISON** has been corroborated by information obtained from public databases, physical surveillance, controlled drug purchases, search warrants, and other cooperating informants. I therefore believe CI#1 is credible and the information provided by CI#1 is reliable.

The CI asked to buy the two that **ELLISON** was in possession of, and **ELLISON** appeared to leave the room. A short time later, **ELLISON** showed the CI Firearm #6. The CI agreed to buy Firearm #6 and buy one firearm from **HALL** instead of two. The CI gave **ELLISON** $1,200 for Firearm #6, a Mossberg International (CBC), Model 715P, .22 long rifle caliber pistol, bearing serial CP2204953. **ELLISON** instructed the CI to "wipe down (eliminate fingerprint and DNA evidence)" the firearm. This is the second time **ELLISON** admitted to selling firearms and not wanting to sell them, the first time is noted in paragraph 16. This is also the second time **ELLISON** has expressed concerns about his fingerprints being on the firearms. Additionally, the firearm was loaded with 19 live .22 long rifle rounds. A computer check of Firearm #6 was completed and revealed it to be stolen.

8. After the purchase, the CI asked how many other firearms **ELLISON** had to sell. **ELLISON** asked how many the CI wanted and the CI informed **ELLISON** that s/he may come back for a "couple more". The CI asked what four firearms would cost and **ELLISON** told the CI four firearms would cost $1,050 each. As casual conversation continued, **ELLISON** told the CI that he (**ELLISON**) was in possession of a .40 caliber pistol "with a 100 round clip." The CI asked how much **ELLISON** would sell the firearm for and **ELLISON** informed the CI that it wasn't for sale because he had to "save something." **ELLISON** informed the CI that he (**ELLISON**) was in possession of "four of those mother fuckers (firearms)." The CI asked **ELLISON** why he (**ELLISON**) would want to keep four guns. **ELLISON** didn't answer the CI but instead said that **HALL** had "bought everything off the train." **ELLISON** told the CI that a flat-bed truck full of guns was brought to his residence and "a whole generation got one of them bitches!" I believe **ELLISON** wants to keep firearms for his protection, and when **ELLISON** said he had to "save something," he is stating he wants to save firearms for himself. Based on my training and experience in this investigation, I believe when **ELLISON** stated **HALL** "bought everything off

3

the train" and a flat-bed truck full of guns was brought to his residence, **ELLISON** is boasting about the number of firearms he and **HALL** can obtain for the CI.

9. **ELLISON** asked the CI what s/he was doing with all the guns s/he has bought. The CI responded "Sell, trade" and **ELLISON** told the CI to be careful. While they were talking, **HALL** arrived carrying in an AR-style pistol and told the CI it was brand new. After negotiating over price, the CI purchased the firearm for $1,300. **HALL**'s girlfriend, Barbara SAUNDERS, arrived with him (**HALL**) and after the deal for $1,300 was made, it was SAUNDERS who gathered the money. The firearm purchased from **HALL** was a Palmetto State, Model PA-15, 5.56/2.23 caliber pistol, bearing serial number SCB742294 (Firearm #7). The firearm was loaded with 29 live 2.23/5.56 rounds.

10. On November 20, 2024, **ELLISON** spontaneously contacted the CI to let the CI know s/he could order as many firearms as s/he needed. The CI only needed to provide a day s/he wanted to purchase them, and **ELLISON** would have the firearms at his residence.

11. On November 23, 2024, **HALL** was in contact with the CI and informed the CI he had two machine guns for sale for $5,000. **HALL** stated he had even more guns if the CI wanted them. Utilizing video communications, **HALL** showed the CI the firearms he had for sale.

12. On November 25, 2024, at approximately 2:00 p.m., the CI responded to **HALL**'s residence and met with **HALL** inside the residence. **HALL** brought two firearms for the CI to purchase (Firearms #8 & #9). **HALL** stated Firearm #8 was a machine gun, but Firearm #9 was not. **HALL** explained that the wire like device attached to the firearm was what made the firearm a machine gun. **HALL** said the device had to be behind the trigger when you pulled the trigger. The CI inquired why **HALL** did not have the other machine gun and **HALL** said he had it, but would not sell it to the CI. Since **HALL** originally agreed to sell two machine guns, the CI argued with **HALL** and insisted **HALL** sell the second machine gun. **HALL** would not agree to sell it

4

and eventually the CI left with Firearms #8 and #9. **HALL** stated he would have more firearms in the future. Based on my training and experience, and as previously stated, I believe **HALL** wanted to keep the firearm for his personal use to protect himself.

13. During a debrief of the CI after the transaction, the CI stated he saw other rifles at **HALL**'s residence and **HALL** stated he had handguns at his residence.

14. Firearm #8 does not have any markings on it and has a device attached to it that is behind the trigger intended to turn the firearm into a machine gun. Firearm #8 will be sent to the ATF laboratory for further analysis. Firearm #9 is an Anderson Manufacturing, Model AM-15, pistol, bearing serial number 24115968.

15. On November 23, 2024, **ELLISON** was in contact with the CI and informed the CI he had two guns for sale for $2,500.

16. On November 25, 2024, at approximately 3:00 p.m., the CI responded to **ELLISO**N's residence and met with **ELLISON** inside the residence. **HALL** was also located at **ELLISON**'s residence. After the CI arrived, another individual with a backpack arrived at the residence and provided **ELLISON** with Firearm #10. **ELLISON** gave Firearm #10 and Firearm #11 to the CI. The CI paid **ELLISON** for both firearms. **ELLISON** stated he had four more .40 caliber firearms and showed the CI a .40 caliber pistol he had retrieved from a different room inside his residence.

17. Firearm #10 is a Anderson Manufacturing, Model AM-15, bearing serial number 24044432. Firearm #11 is also an Anderson Manufacturing, Model AM-15, bearing serial number 24141464.

5

Case 4:24-mj-00162-JAM    Document 1-1    Filed 11/27/24    Page 5 of 8

18. **ELLISON** was convicted of the following felonies in the 16th Judicial Circuit Court of Jackson County, Missouri:

- 1st Degree Tampering – Case No. 16CR88004146. He was found guilty on October 7, 1988.
- 2nd Degree Murder and Armed Criminal Action – Case No. 49100097601. He was found guilty on June 25, 1992.

19. **HALL** was convicted of the following felonies in the 16th Judicial Circuit Court of Jackson County, Missouri:

- 1st Degree Tampering. He was found guilty on March 24, 1986.
- One (1) count of 1st Degree Tampering, one (1) count of Felony Stealing, three (3) counts of 1st Degree Armed Robbery and three (3) counts of Armed Criminal Action – Case No. CR853313.
- Three (3) counts of 1st Degree Robbery and three (3) counts of Armed Criminal Action – Case No. 49200230600. He was found guilty on April 1, 1993.
- 2nd Degree Robbery and Armed Criminal Action – Case No. 0616CR0014201. He was found guilty on September 7, 2006.

20. **HALL** was convicted of the following felony in the 26th Judicial Circuit Court of Morgan County, Missouri:

- 1st Degree Endangering the Welfare of a Child: 1st Offense, No Sexual Contact – Case No. 16MGCR0006201. He was found guilty on August 11, 2016.

21. On November 26, 2024, United States Magistrate Judge John T. Maughmer signed search warrants for **ELLISON**'s and **HALL**'s residences. During preparations for the execution of the search warrant, **HALL** contacted the CI and informed the CI that he (**HALL**) had more firearms for sale to include two pistols he (**HALL**) did not have the previous day.

22. The investigators executed the search warrants on **ELLISON** and **HALL**'s residences on November 26, 2024. **ELLISON** was taken into custody at his residence. While outside with investigators, **ELLISON** was seen attempting to talk in code to his wife, it was believed by investigators that he (**ELLISON**) was inquiring if she contacted **HALL** and if **HALL** got away from law enforcement. **ELLISON** was informed by his wife that **HALL** had gotten away.

23. When investigators assigned to **HALL**'s residence were preparing to approach the house, surveillance teams observed **HALL** and his girlfriend, Barbara SAUNDERS, quickly exit the residence with a large bag. **HALL** and SAUNDERS entered **HALL**'s vehicle he had been driving and drove away from the residence. When law enforcement began to follow him, he turned off his headlights and drove into oncoming traffic to elude them. Investigators then executed the search warrant for **HALL**'s residence.

24. The following firearms were seized from **ELLISON**'s residence (8004 E. 103rd Terrace, Kansas City, Missouri):

- Heckler and Koch (HK), model VP9, 9mm pistol, bearing serial number 224-112669
- Anderson Manufacturing, model AM-15, multi-caliber pistol, bearing serial number 24080840
- HI Point, model JCP, .40 caliber pistol, bearing an apparent obliterated serial number
- Remington, model 550-1, .22 caliber rifle, with no visible serial number
- Hi Point, model JCP, .40 caliber pistol, bearing serial number X7289247
- Smith and Wesson, model SD40 VE, .40 caliber pistol, bearing serial number FDA5417

- Glock, model 33 (Gen 4), .357 caliber pistol, bearing serial number BBAV81
- Multiple rounds of assorted rounds of ammunition were also seized

25. The following firearm was seized from **HALL**'s residence (11100 E. 49th Street, Kansas City, Missouri):

- Taurus, model G2G, 9mm pistol, bearing serial number TLM86436

26. On November 27, 2024, all seized firearms from both search warrants, except the Smith and Wesson from **ELLISON**'s residence, were determined by Nexus Agents Stephen White and Angelica Carpenter to not have been manufactured in the state of Missouri, therefore affecting interstate commerce. Also, ATF Nexus Agent White has inspected the Anderson Manufacturing, Model AM-15, pistol, bearing serial number 24115968, possessed by **HALL** on November 25, 2024, and determined that it was not manufactured in the state of Missouri.

## CONCLUSION

27. Based on the foregoing, the affiant believes there is probable cause to believe that Ernest L. **HALL** committed violations of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8) (being a felon in possession of a firearm).

DEREK GARTH
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed to and sworn to ~~before me~~   By telephone at 3:11 pm

on this __27th__ day of November, 2024,

HONORABLE W. BRIAN GADDY
United States Magistrate Judge
Western District of Missouri